UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
NOEL SANTIAGO,

                         Petitioner,

          – against –

DALE ARTUS, Superintendent,

                         Respondent.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

15-cv-2361 (AMD)

ANN M. DONNELLY, District Judge.

The *pro se* petitioner, currently incarcerated at Attica Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 11, 2010, the petitioner was convicted of Rape in the First Degree, Criminal Sexual Act in the First Degree, and Endangering the Welfare of a Child. The petitioner claims that his trial lawyer was ineffective, and that the trial judge mishandled jury notes in violation of New York law. For the reasons that follow, the petition for a writ of habeas corpus is denied.

## FACTUAL BACKGROUND

### 1. Overview

The petitioner was convicted for the rape and sexual assault of a 12-year-old girl. (ECF No. 15-7 at 73:17-74:3.) The child immediately reported the attack to her godmother, Lakisha Whitlock, who called the police. (ECF No. 15-5 at 99:25-100:5, 113:3-6.) Both the victim and Ms. Whitlock were taken to the hospital, and the child was interviewed by a detective and by an assistant district attorney. (*Id.* at 113:13-18, 116:19-117:5; ECF No. 15-4 at 55:13-56:4.) The petitioner was arrested nine days later, and made oral and written statements in which he

1

admitted to some contact with the victim, but claimed that it was a mistake. (ECF No. 15-4 at 64:19-23, 67:5-7, 78:22-79:17, 84:4-86:1.) A grand jury returned an indictment charging the petitioner with Rape in the First Degree, Criminal Sexual Act in the First Degree, Endangering the Welfare of a Child, Assault in the Third Degree, and Harassment in the Second Degree.

2. Pre-Trial Suppression Hearing

The petitioner was represented by Kenneth Deane, who moved to suppress the petitioner's statements, as well as the victim's confirmatory identification of the petitioner. (ECF No. 15-2 at 98:7-11.) Judicial Hearing Officer Joan O'Dwyer held a hearing at which two New York City Police Department detectives testified about their interviews of the victim and her godmother, the victim's photographic identification of the petitioner, and the circumstances of the petitioner's statements to the police. (*See id.* at 5-85.) Counsel cross-examined both detectives on discrepancies in their paperwork, and about the details of the photographic identification. (*See id.* at 18-53, 69-90.) He confronted Detective Richard Lampasona with his failure to videotape or tape record the petitioner's statements. (*Id.* at 42:23-43:13.) He also moved for an independent source hearing, at which the young victim would have been required to testify. (*Id.* at 99:23-100:2.) The court denied the motion in its entirety.

3. The Trial

The petitioner went to trial before the Honorable Barry Kron and a jury. (*See id.* at 103.)

   *a. The Prosecution's Case*

Six witnesses testified for the prosecution: Detective Richard Lampasona, Lakisha Whitlock, the victim, Detective Katherine Clements, Carl Gajewski from the Office of Chief Medical Examiner, and Dr. Jamie Hoffman-Rosenfeld. (*See* ECF No. 15-4 at 50-119; ECF No. 15-5 at 2-58, 87-147, 180-199; ECF No. 15-6 at 3-29, 32-79.)

In March of 2008, the 12-year-old victim[1] came from North Carolina to stay with her godmother, Lakisha Whitlock. (ECF No. 15-5 at 53:19-54:17, 88:11-14, 89:23-90:1.) The petitioner, whom Ms. Whitlock had been dating for a few weeks, was also at the apartment. (*Id.* at 5:11-15, 6:10-13, 12:14-24.) The petitioner made the victim uncomfortable, because he stared at her and "was looking at [her] funny." (*Id.* at 93:14-94:4.) On March 23, 2008, the victim was sleeping in the living room while Ms. Whitlock, the petitioner and some of Ms. Whitlock's cousins were drinking and smoking marijuana in Ms. Whitlock's bedroom.[2] (*Id.* at 6:22-25, 94:5-9.) At one point, the petitioner walked Ms. Whitlock's cousins out of the apartment. (*Id.* at 9:18-25.) When he returned, he went to the victim, who was lying on her stomach, and started touching her legs and back. (*Id.* at 95:10-11, 97:4-6.) The victim "just laid there," and did not call for help because she "was scared." (*Id.* at 97:7-12.) The petitioner "unzipped his pants," and pushed the victim's shorts, underwear, and sanitary napkin to the side.[3] (*Id.* at 97:13-25, 135:12-19.) He put his penis in the victim's vagina "just a little," which hurt. (*Id.* at 97:16-17, 98:9-12, 98:24-25.) Calling the victim "Q", the petitioner said: "I know you want to. I thought you wanted it, don't you want it." (*Id.* at 98:1-5.) The petitioner's penis also "touched" the victim's anus, which also hurt. (*Id.* at 98:15-23.)

The victim "kept telling" the petitioner to stop. (*Id.* at 99:13-17.) When she got louder, the petitioner whispered, "Please don't tell nobody, please do not tell nobody, you better not tell nobody, don't tell nobody." (*Id.* at 99:14-21.) He did not ejaculate, and went to Whitlock's room. (*See id.* at 99:11-12, 99:22-23.) The victim was crying, and went to Whitlock's

---

[1] Pursuant to 18 U.S.C. § 3771(a)(8, (b)(2)(A), the victim is not identified in this order.
[2] Ms. Whitlock's mother and two children were in separate rooms in the apartment. (ECF No. 15-5 at 9:10-14.)
[3] The victim was menstruating. (ECF No. 15-5 at 135:7-13.)

daughter's room. (*Id.* at 99:24-100:1.) Using the daughter's cell phone, the victim sent four messages to Whitlock between 2:33 a.m. and 2:47 a.m.:

- "I need to talk to you, it's an emergency."
- "Are you awake? Please, Keisha, please wake up, I really need to talk to you. Please wake up for me."
- "I am in the kids' room."
- "I'm scared, Keisha."

(*Id.* at 100:4-5, 104:16-105:6.)

When Ms. Whitlock did not answer, the victim knocked on her door. (*Id.* at 105:10-16.) She was afraid of the petitioner, but "really needed to tell" Ms. Whitlock what the petitioner did. (*Id.* at 106:2-14.) The petitioner answered the door, and the victim "pushed the door on him" and told Ms. Whitlock that she needed to talk to her. (*Id.* at 105:20-106:1, 106:19-22.) Ms. Whitlock and the victim went to the living room, and the victim told her what happened. (*Id.* at 106:23-107:1.) Ms. Whitlock also started crying, and held the victim. (*Id.* at 107:4-7.) She then went into her bedroom, and yelled that the petitioner was "a pervert, a child molester and rapist." (*Id.* at 107:8-22.) The petitioner punched Ms. Whitlock, and fled. (*Id.* at 15:22-24, 16:11-15, 17:10-17.)

Ms. Whitlock called the police, who arrived shortly thereafter, as did an ambulance. (*Id.* at 113:3-10.) Paramedics drove the victim and Ms. Whitlock to the hospital. (*Id.* at 113:13-18.)

    b.    *The Defense Case*

The petitioner's lawyer called two witnesses—Police Officer Christine Rebalko Rodeschin and emergency medical technician Priscilla Millan. (ECF No. 15-6 at 98-110, 118-31.) While neither witness had an independent recollection of the case, counsel established

4

through reports that the victim had made some inconsistent statements, including that "there was no penetration." (*See id.* at 101:2-102:2, 104:12-18, 125:10-23, 131:16-19.)

### c. Jury Deliberations

The jury sent four notes during deliberations. In those notes, they asked for readback of testimony, items of physical evidence, and to hear portions of the court's charge. (ECF No. 15-7 at 63:12-16, 66:7-11, 70:16-18; ECF No. 15-1 at 108-10.) The court responded to the notes, and counsel made no objection. (*See* ECF No. 15-7 at 66:12-72:24.)

### d. Verdict

On March 11, 2010, the jury found the petitioner guilty of Rape in the First Degree, Criminal Sexual Act in the First Degree, and Endangering the Welfare of a Child, and acquitted him of Assault in the Third Degree and Harassment in the Second Degree. (*Id.* at 73:17-74:11.)

### e. Sentence

On April 14, 2010, Judge Kron sentenced the petitioner to concurrent determinate prison terms of 18 years and 18 years of post-release supervision; he imposed a concurrent one-year sentence on the endangering count.[4] (*Id.* at 107:1-9.)

### f. Counsel's Strategy

In his opening statement and summation, the petitioner's counsel argued that the petitioner, in a drunken stupor, mistook the victim for the victim's godmother, and lay down next to her on the living room floor, but never had any sexual contact with her. (ECF No. 15-4 at 45:22-24, 46:24-47:10; ECF No. 15-6 at 134:5-14.) He argued that the petitioner's oral admission was "manufactured by the police." (*Id.* at 49:1-8.)

---

[4] Judge Kron also issued a permanent order of protection in favor of the victim. (*See* ECF No. 15-7 at 107:11-14.)

Counsel cross-examined all of the prosecution's witnesses. He confronted the victim with her prior statements to an EMT and to a detective, challenged Ms. Whitlock's credibility, and questioned the investigating detective about his failure to take notes of or record the petitioner's statements. (ECF No. 15-4 at 97:18-24, 98:21-101:14; ECF No. 15-5 at 39:8-42:10, 139:2-23, 140:25-141:7.) He also focused on the absence of any forensic or medical evidence, including DNA, to support the victim's testimony. (ECF No. 15-4 at 106:9-109:13; ECF No. 15-6 at 70:9-20.)

At various points in the trial, counsel pressed the prosecution for additional discovery. (*See* ECF No. 15-5 at 43:22-46:13, 84:20-86:17.) He also moved for the production of a social worker's notes, which Judge Kron denied. (*Id.*) Counsel made five motions for mistrial, and convinced the court to delay the petitioner's sentencing so that a psychologist could weigh in on the petitioner's psychological condition. (ECF No. 15-4 at 57:6-63:22; ECF No. 15-5 at 78:12-79:24, 152:18-154:20; ECF No. 15-6 at 159:17-161:6; ECF No. 15-7 at 58:9-62:6.)

## PROCEDURAL HISTORY

In June of 2011, the petitioner, through appellate counsel, appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. (ECF No. 15 at 1-37.) The petitioner argued that Judge Kron denied trial counsel the opportunity to question prospective jurors during *voir dire*, and that the prosecutor's questions to a prospective juror about his work experience with the FBI were improper. (*Id.* at 18-36.) In a supplemental brief, the petitioner's

counsel faulted Judge Kron's "complete and repeated failure to follow the proper and required procedure for responding to jury requests." (*Id.* at 108-117.)[5]

While his appeal was pending, the petitioner moved to vacate his conviction pursuant to CPL § 440.10, claiming ineffective assistance of counsel. (ECF No. 15-1 at 33-53.) He argued that his lawyer: (1) failed to investigate whether the petitioner was represented when he was arrested, (2) should have moved to suppress the petitioner's statements as the product of coercion, and in violation of his right to counsel, (3) failed to argue that the statements were involuntary, (4) failed to prepare the petitioner to testify before the grand jury, (5) failed to ask the court for an *in camera* inspection of a social worker's report or to investigate the victim's allegedly false rape allegation against another person in North Carolina, (6) failed to request a jury instruction on the voluntariness of the petitioner's statement to the police, (7) failed to move to re-open the *Huntley* hearing, (8) failed to request discovery, and (9) failed to move to dismiss the indictment. (*Id.* at 41-53.)

In a written decision on May 17, 2013, Judge Kron denied the motion, ruling that the petitioner's claims were procedurally barred because the petitioner's appeal to the Appellate Division was pending. (*Id.* at 85-87.) He further held that the petitioner "failed to demonstrate prejudice" and "failed to provide any objective evidence to support his claims." (*Id.* at 88.) Judge Kron also concluded that the petitioner's attorney "provide[d] him with effective assistance of counsel;" counsel "properly engaged in pre-trial motion practice and sought to suppress statement evidence and identification testimony," "filed a speedy trial motion and

---

[5] The prosecution asked Judge Kron "to have the trial record corrected to reflect any colloquy or action among the Court and the attorneys regarding Jury Notes 1-4." (ECF No. 15-1 at 89-106.) Judge Kron denied the motion because "[a]t this time and on this record the Court does not believe further action is warranted. If further amplification of the record is deemed by the Appellate Division to be necessary, this Court is fully prepared to conduct any further proceedings as may be directed." (ECF No. 14 at 109-10.)

supplementary discovery motions," and "presented a well-reasoned and cogent defense at trial by undermining and attacking the reliability of the complaining witness." (*Id.*) "[H]aving presided over the trial," Judge Kron was "satisfied that counsel's performance met both the federal and state standard of meaningful representation." (*Id.*) "During the trial, counsel was knowledgeable about the facts, gave a cogent opening statement, cross-examined the People's witnesses, raised objections, gave a substantive summation, made motions for a mistrial and participated in read-backs during jury deliberations." (*Id.*) In addition, Judge Kron found that "[t]he record demonstrates that defendant's counsel moved to dismiss the indictment alleging an improper grand jury presentation[,] . . . requested discovery pertaining to the victim's past rape and social worker's interview notes," and "also requested a jury instruction on the voluntariness of a statement which the Court granted and gave to the jury;" thus, the petitioner's claims "regarding these issues [are] directly refuted by the record" and "there is no reasonable possibility that the allegations are true." (*Id.* at 86-87.)

The petitioner applied for leave to appeal Judge Kron's decision, which the Appellate Division denied on October 16, 2013. (ECF No. 14 at 39-48, 98.)

On May 7, 2014, the Appellate Division affirmed the judgment of conviction. (ECF No. 14 at 1-2.) The court rejected the petitioner's argument that his counsel was denied a fair opportunity to question prospective jurors during *voir dire*. (*Id.*) While the court agreed that the prosecutor's questions about "a prospective juror's professional opinion based upon his extensive experience in law enforcement . . . regarding whether people prefer to commit crimes at times when they are less likely to be observed" were improper, the court determined that it was an "essentially common sense proposition" and could not have caused any prejudice to the defendant requiring reversal." (*Id.* at 2.) The court held that the petitioner had not preserved his

claim about the jury notes, and declined "to reach the contention in the exercise of our interest of justice jurisdiction." (*Id.*) "Since the jury merely requested read-backs of certain trial testimony, trial exhibits, and read-backs from the court's charge, the alleged errors did not constitute mode of proceeding errors which would obviate the preservation requirement." (*Id.*)

The petitioner, through appellate counsel, applied for leave to appeal to the New York Court of Appeals, and in a follow-up letter asked the court "to consider whether, when the parties never stipulated to provide exhibits to the jury without prior notification to the attorneys, and the jury requested an exhibit but there is no evidence in the record that the prosecutor or defense counsel ever received notice of the jury note or that the note was responded to, there is a mode of proceedings error requiring reversal." (*Id.* at 3-4; ECF No. 15-1 at 29-32.) The Court of Appeals denied the application on August 12, 2014. (ECF No. 14 at 10.)

## LEGAL STANDARD

In reviewing a habeas petition, a federal court must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine applies to both substantive and procedural state law grounds. *Id.* at 729-30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. 28 U.S.C. § 2254(a). The federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also*

9

*Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### 1. Ineffective Assistance of Counsel

The petitioner argues that his trial lawyer was ineffective for (1) failing to raise a right to counsel violation in connection with the petitioner's statements to the police, (2) failing "to request an In Camera Inspection of a Safe Horizon Report," and (3) failing to argue that his statement to the police "was made involuntarily due to coercion of the police." (ECF No. 1 at 16-17.)

The petitioner raised this claim in his 440.10 motion, which Judge Kron denied on the merits.[6] (ECF No. 15-1 at 41-53.) Judge Kron's decision is entitled to AEDPA deference, and

---

[6] Although Judge Kron ruled that the petitioner's claims were procedurally barred because the petitioner's direct appeal was pending, he adjudicated the petitioner's ineffective assistance of counsel claim on the merits. (*See* ECF

the petitioner must show that the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In a habeas petition asserting a *Strickland* claim, the Supreme Court has advised that the relevant inquiry—whether the state court's determination that counsel rendered effective assistance was an unreasonable application of clearly established law—is "different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Rather, a state court must be granted a "deference and latitude that are not in operation when the case involves a review under the *Strickland* standard itself." *Id.* A federal court "must determine what arguments or theories supported, or . . . could have supported, the state court's decision," and must then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102. The standard was "meant" to be an exacting one; a state habeas petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03.

The *Strickland* standard is itself an exacting one, and requires that a petitioner challenging his attorney's performance overcome the "strong presumption" that counsel's

---

No. 15-1 at 86-88.) Accordingly, Judge Kron's decision is entitled to AEDPA deference. *See Zarvela v. Artuz*, 364 F.3d 415 (2d Cir. 2004) (extending AEDPA deference where "[t]he Appellate Division found petitioner's claim to be unpreserved, and, in any event, without merit, and therefore reviewed the claim on the merits.").

11

performance fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Because a claim of ineffective assistance "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, . . . the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington*, 562 U.S. at 105 (citations omitted).

Thus, an evaluation of counsel's performance is "highly deferential," and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The relevant inquiry focuses "on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696. The "central concern is not with grading counsel's performance but with discerning whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotations and citation omitted).

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two elements: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Under *Strickland*'s first prong, the petitioner must establish that his lawyer's performance was "so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Strickland*, 466 U.S. at 690). A habeas court must

"strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, a presumption that is overcome only through a showing that counsel failed to act reasonably considering all of the circumstances." *Jackson v. Conway*, 763 F.3d 115, 152 (2014) (internal quotation marks and citations omitted).

Under the second prong, the petitioner must establish that his counsel's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. "A reasonable probability is one that is sufficient to undermine confidence in the outcome, which requires a substantial, not just conceivable, likelihood of a different result." *Jackson*, 763 F.3d at 153 (internal quotation marks and citation omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104.

The petitioner cannot satisfy the *Strickland* test in the first instance, much less show that the state court applied *Strickland* "in an objectively unreasonable manner." *See Contant v. Sabol*, 987 F. Supp. 2d 323, 330 (S.D.N.Y. 2013) ("Where, as here, a petitioner seeks habeas review of an ineffective-assistance-of-counsel claim under the test announced in *Strickland*, review is 'doubly deferential.'").

### a. *First* Strickland *Prong: Reasonableness*

The petitioner has not established that his counsel's representation fell below an objective standard of reasonableness. Judge Kron, who presided over the trial, found that the petitioner's attorney provided him with "effective assistance of counsel;" "counsel properly engaged in pre-trial motion practice and sought to suppress statement evidence and identification testimony," "filed a speedy trial motion and supplementary discovery motions," and "presented a well-

reasoned and cogent defense at trial by undermining and attacking the reliability of the complaining witness." Judge Kron's conclusion is amply supported by the record, which demonstrates that counsel mounted a vigorous defense, and that the petitioner was convicted not because of any shortcoming in his counsel's representation, but because of the strength of the evidence against him.

### i. Right to Counsel and the Petitioner's Statements

According to the petitioner, his lawyer should have investigated whether his right to counsel was violated because another attorney—Iliana Santiago—represented the petitioner in connection with a separate case. (ECF No. 1 at 16.) According to the petitioner, he "never waived his right to counsel because [he] was not in Ms. Santiago's presence to do so." (*Id.*)

Under New York law, a criminal defendant's right to counsel is not violated if he is represented on a separate, unrelated criminal matter.[7] *See People v. Steward*, 670 N.E.2d 214, 217 (N.Y. Ct. App. 1996) ("[I]n a subsequent custodial interrogation about matters unrelated to the charge upon which a defendant was assigned counsel in a prior separate proceeding, the suspect is competent to waive the right to counsel in the absence of counsel as to such matters."); *People v. Lopez*, 947 N.E.2d 1155, 1161 (N.Y. Ct. App. 2011) ("[T]he derivative right no longer exists."). In connection with this case, which was unrelated to the case in which the petitioner was represented, the detectives advised the petitioner of his rights, which he waived. Counsel cannot be faulted for declining to pursue a meritless claim. *See Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

---

[7] Ms. Santiago confirmed in a letter dated September 11, 2012, that she did not represent the petitioner in the rape case. (ECF No. 1 at 24.)

The petitioner also argues that his counsel should have cross-examined Detective Lampasona about threats the detective supposedly made when he questioned the petitioner. (ECF No. 1 at 16-17.) Counsel's strategy in this regard was not ineffective. Counsel challenged the way in which the statements were taken, and underscored the inconsistencies between the oral confession—for which there were no contemporaneous notes—and the written statement, which was largely exculpatory; the petitioner did not admit that he raped the victim, but claimed that he mistook her for her godmother.

### ii. Safe Horizon Report

I also reject the petitioner's complaints about the way counsel approached the petitioner's claim that the victim falsely accused someone of rape in North Carolina, as well as his claim that counsel should have done more to get a report by social worker Jacqueline Colazzo from Safe Horizon. (*See* ECF No. 1 at 16.)

The record shows that counsel in fact did precisely what the petitioner claims he did not do. Counsel made multiple requests for the Safe Horizon report, and argued that the prosecution's failure to turn over Colazzo's notes was a discovery violation. The court rejected the counsel's claim. Counsel also argued that he should be able to confront the victim about her prior allegedly false rape allegation, but the court precluded such questioning under CPL § 60.42.

### b. Second Strickland *Prong: Prejudice*

Even if the record had supported the petitioner's claims, he suffered no prejudice. The evidence against the petitioner—the compelling testimony of the child victim and her godmother, the victim's prompt outcry, and the petitioner's own statements—was powerful, and

there is no probability that the jury would have acquitted the petitioner had his lawyer employed a different strategy.

Accordingly, Judge Kron's decision to reject the petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of, clearly established Supreme Court law. The petitioner's request for *habeas* relief on this basis is therefore denied.

2. Jury Notes

The petitioner argues that Judge Kron did not "provide meaningful notice by following the required procedure in responding to the jury's request note." (ECF No. 1 at 18.) In particular, the petitioner claims that the first, second, and fourth notes sent by the jury "were not read into the record in full." (*Id.*) "Therefore, trial counsel never heard the contents," and was not "afforded a fully opportunity to suggest an appropriate response" or allowed "a chance to request any modification for judicial instruction." (*Id.*) He alleges a "mode of proceedings error" on the basis that his "counsel was unable to meaningfully participate at an [sic] crucial state of the trial." (*Id.*)

This claim is procedurally barred because the Appellate Division held that the petitioner's argument was "unpreserved for appellate review," and declined "to reach the contention in the exercise of our interest of justice jurisdiction." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted) (Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."); *Williams v. Artus*, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010) ("The Court of Appeals for the Second Circuit has acknowledged that New York's contemporaneous objection

16

rule . . . is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim."). Nor has the petitioner shown "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[d] that failure to consider the claims will result in a fundamental miscarriage of justice." *Azaz v. Artus*, No. 09-CV-3857, 2011 WL 9368971, at *8 (E.D.N.Y. Nov. 2, 2011), *report and recommendation adopted*, No. 09-CV-03857, 2012 WL 5289519 (E.D.N.Y. Oct. 19, 2012); *see also Powell v. Graham*, No. 10-CV-1961, 2013 WL 37565, at *8 (E.D.N.Y. Jan. 3, 2013) (same); *Severino v. Phillips*, No. 05-CV-475, 2008 WL 4067421, at *8 (S.D.N.Y. Aug. 25, 2008) (same).

Moreover, the petitioner alleges a violation of state law, not a constitutional violation. *See Cornado v. Bellnier*, No. 10-CV-5265, 2012 WL 6644637, at *5-6 (S.D.N.Y. Sept. 20, 2012) ("A claim premised on a violation of [CPL §] 310.30 does not allege a violation of a federally protected right."). Accordingly, the claim is not cognizable upon federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("We reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
September 27, 2018